UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Erika Gibbs, | ) |
|         Plaintiff, | ) ) ) ) Case No. |
| v. | ) ) |
| PODS Enterprises LLC, | ) ) |
|         Defendant. | ) |

## COMPLAINT

Plaintiff Erika Gibbs makes the following Complaint alleging violations of Title VII, the Illinois Human Rights Act, and the Equal Pay Act, and in support of those allegations, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Erika Gibbs ("Gibbs") is an adult female currently residing in Medina County, Texas.

2. Defendant PODS ("PODS") is a Florida corporation with a principal office in Clearwater Florida and an undetermined number of operational offices in Illinois.

3. Plaintiff worked at two of PODS' Illinois facilities, in Elgin and Libertyville, both located in the Northern District of Illinois, Eastern Division.

4. This Court has personal and subject matter jurisdiction over the Defendant under Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 42 U.SC. § 2000e, *et. seq.*, and the Equal Pay Act of 1964, 29 U.S.C. § 206(d).

5. Venue is proper pursuant to 28 U.S.C. § 1391 because the claims asserted in this action arose in this district and the alleged discrimination and damages occurred in this district.

1

## FACTS

6. Gibbs began her employment with PODS on or about January 13, 2020 as a Market Manager I.

7. Gibbs was responsible for the daily operation and management of two locations, one in Elgin, Illinois and one in Libertyville, Illinois.

8. Gibbs reported to Keith Risely ("Risely"; male), the then-Senior Territory Manager.

9. Gibbs's physical office location was at the Elgin location where she supervised a crew of all men.

10. From the start of her employment until her improper termination, Gibbs suffered severe and pervasive unlawful harassment.

11. From the start of her employment until her termination, Gibbs and the only other female employee were treated less favorably than their male counterparts.

12. Subordinate Mike Borrelli ("Borrelli"; male) frequently referred to Gibbs as "dumb bitch," told her she "knew nothing," and refused her instruction and direction.

13. Borrelli frequently yelled, slammed doors, stormed off, kicked containers and other inanimate objects, erratically drove forklifts, and punched walls.

14. Gibbs's efforts to control or stop Borrelli's behavior were frequent but largely unheeded.

15. Gibbs sought assistance from Risely to address these issues but Risely refused to assist.

16. Borrelli made sexist and offensive comments that included talking openly about women he "wanted to f***" and other off-color and inappropriate statements despite explicit instruction not to do so from Gibbs and other members of management.

17. Gibbs heard these statements.

18. Gibbs was offended by these statements and they were unwelcome.

19. Gibbs complained about the hostile work environment these comments created but Risely did nothing.

20. Another one of Gibbs's subordinates disregarded Gibbs's direction and spoke down to her in a sexist and condescending way.

21. Gibbs complained to Risely but his only response was "yeah, he's going to be a problem."

22. Another one of Gibbs's subordinates frequently and graphically talked about his sex life in Gibbs's presence despite explicit instruction not to do so.

23. Gibbs complained to Risely about the hostile work environment these comments created but Risely did nothing.

24. On multiple occasions Gibbs sought assistance from Risely to address Borrelli's conduct, but Risely's only response was "work it out."

25. Gibbs attempted to use progressive discipline to address these issues but issuing verbal warnings only worsened the behavior.

26. Despite Gibbs's frequent complaints regarding Borrelli and her request to interview other candidates for his position (he was not yet a permanent employee) Risely authorized Borrelli's permanent hire in February of 2020.

27. By the end of February 2020, Gibbs locked her office door on a near-daily basis out of concern for her personal safety.

28. In late February of 2020 Gibbs learned that she had been hired as a Market Manager I when PODS's standard policy and practice was to give employees who were assigned two locations the title of Market Manager II.

29. Upon information and belief, all of the other Market Managers in her region that had two locations assigned to them were male.

30. Upon information and belief, all of the other Market Managers in her region that had two locations assigned to them were Market Manager IIs.

31. Despite this hostile and oppressive work environment, Gibbs adequately performed her job and was at all times during her employment meeting her employer's legitimate performance expectations.

32. Gibbs was never given a verbal warning for any performance-related issue or concern.

33. Gibbs was never given a written warning for any performance-related issue or concern.

34. Gibbs was never provided or placed on any performance improvement plan.

35. On or about March 2, 2020 Borrelli's erratic behavior was concerning enough that Gibbs feared for her personal safety, and contacted the human resources department for assistance.

36. Gibbs was instructed to send Borrelli home but Borrelli refused to leave the premises, and instead paced menacingly outside of Gibbs's office.

37. Gibbs was in fear and PODS did nothing to address the situation.

38. PODS did not conduct an investigation of the incident.

39. PODS did not discipline Borrelli for his harassment or insubordination.

40. PODS did not do anything to stop the harassment.

41. The following day, March 3, Gibbs was told to limit her work to "desk duty," which was an effective demotion.

42. Three days later, on March 6, 2020, PODS reassigned the Libertyville location to a male Market Manager.

43. On March 10, 2020 Borrelli lunged at Gibbs in a sufficiently-threatening manner that Gibbs once again retreated to her office, locked the door and contacted Risely and Human Resources.

44. No investigation was initiated and Gibbs was sent home.

45. Gibbs sent the human resources department an email from home outlining the details of her struggles with the hostile work environment and a request for help.

46. Human Resources did not respond to Gibbs's email.

47. Risely called Gibbs the next day and terminated her employment, saying she was the "wrong fit."

48. Gibbs timely filed with the EEOC. She received her Notice of Right to Sue ("NTS") on or about August 8, 2021. (Exhibit 1 attached hereto.)

**COUNT I:**
**Discrimination on the Basis of Sex in Violation of in Violation of Title VII, U.S.C. §2000e-2(a)**

49. Gibbs incorporates and alleges paragraphs 1 through 47 as if fully set forth in this Count I.

50. Gibbs is a member of a protected class (female).

51. Gibbs was and remained qualified for the Position of Market Manager I and Market Manager II.

52. Gibbs was meeting her employer's legitimate performance expectations.

53. Gibbs was terminated.

54. Gibbs's termination was on the basis of her sex, in violation of Title VII.

55. Gibbs suffered damages due to PODS unlawful discrimination including, but not limited to, lost pay and emotional distress.

56. Gibbs seeks damages as permitted by Title VII, including, but not limited to:

    a. back pay,

    b. equitable relief, including but not limited to reinstatement or front pay damages in lieu thereof;

    c. compensatory damages;

    d. punitive damages;

    e. reasonable attorneys' fees and costs;

    f. tax offset; and

    g. interest awards and all other relief deemed necessary and reasonable by the Court.

## COUNT II:
## Sexual Harassment in Violation of Title VII, 42 U.S.C. §2000e-2(a)

57. Gibbs incorporates and alleges paragraphs 1 through 55 as if fully set forth in this Count II.

58. Gibbs was subjected to unwelcome conduct based on her sex, female, by her all-male subordinates and her male supervisor.

59. The unwelcome conduct was severe and pervasive in both scope and frequency.

60. The unwelcome conduct created a work environment that a reasonable person would find intimidating, hostile, and abusive.

61. The unwelcome conduct and the hostile work environment it created altered the terms and conditions of Gibbs's employment.

62. PODS's failure to discipline, transfer, or terminate the offending employees, most obviously Borrelli, created an intimidating, hostile, and abusive work environment that altered the terms and conditions of Gibbs's employment.

63. PODS's failure to provide a safe working environment for Gibbs created an intimidating, hostile, and abusive work environment that altered the terms and conditions of Gibbs's

6

employment.

64. PODS is liable under Title VII because it failed to address or correct the hostile work environment.

65. Gibbs suffered damages due to this unlawful harassment including, but not limited to, lost pay and emotional distress.

66. Gibbs seeks damages as permitted by Title VII, including, but not limited to:

   a. back pay,

   b. equitable relief, including but not limited to reinstatement or front pay damages in lieu thereof;

   c. compensatory damages;

   d. punitive damages;

   e. reasonable attorneys' fees and costs;

   f. tax offset; and

   g. interest awards and all other relief deemed necessary and reasonable by the Court.

### COUNT III:
### Sexual Harassment in Violation of the Illinois Human Rights Act, 775 ILCS 5/2-102(D)

67. Gibbs incorporates and alleges paragraphs 1 – 65 as if fully set forth in this Count III.

68. Gibbs was subjected to unwelcome conduct based on her sex, female, by her all-male subordinates and her male supervisor.

69. The unwelcome conduct was severe and pervasive in both scope and frequency.

70. The unwelcome conduct created a work environment that a reasonable person would find intimidating, hostile and abusive.

71. The unwelcome conduct and the hostile work environment it created altered the terms and conditions of Gibbs's employment.

72. PODS's failure to discipline, transfer, or terminate the offending employees, most obviously Borrelli, created an intimidating, hostile and abusive work environment that altered the terms and conditions of Gibbs's employment.

73. PODS's failure to provide a safe working environment for Gibbs created an intimidating, hostile, and abusive work environment that altered the terms and conditions of Gibbs's employment.

74. PODS is liable under the Illinois Human Rights Act because it failed to reasonably respond to, let alone correct, the hostile work environment.

75. Gibbs suffered damages due to this unlawful harassment including, but not limited to, lost pay and emotional distress.

76. Gibbs seeks damages as permitted by the Illinois Human Rights Act, including, but not limited to:
    a. back pay,
    b. equitable relief, including but not limited to reinstatement or front pay damages in lieu thereof;
    c. compensatory damages including damages for significant emotional distress;
    d. reasonable attorneys' fees and costs;
    e. tax offset; and
    f. interest awards and all other relief deemed necessary and reasonable by the Court.

## COUNT IV:
### Retaliation in Violation of in Violation of Title VII, 42 U.S.C. § 2000(e)-3(a)

77. Gibbs incorporates and alleges paragraphs 1 through 75 as if fully set forth in this Count I.

8

78. Gibbs engaged in protected activity by repeatedly complaining about harassment and discrimination to both her supervisor and the human resources department throughout her term of employment.

79. Specifically, Gibbs engaged in protected activity on March 10, 2020 when she wrote to the human resources department specifically complaining of harassment and asking for assistance in resolving the issue.

80. Instead of being provided the requested assistance, Gibbs was terminated.

81. A causal connection exists between Gibbs's protected activity and her termination.

82. Gibbs suffered damages due to this unlawful retaliation including, but not limited to, lost pay and emotional distress.

83. Gibbs seeks damages as permitted by the Illinois Human Rights Act, including, but not limited to:

    a. back pay,
    b. equitable relief, including but not limited to reinstatement or front pay damages in lieu thereof;
    c. compensatory damages;
    d. punitive damages;
    e. reasonable attorneys' fees and costs;
    f. tax offset; and
    g. interest awards and all other relief deemed necessary and reasonable by the Court.

## COUNT V:
## Violation of the Equal Pay Act, 29 U.S.C. § 206(d)

84. Gibbs incorporates and alleges paragraphs 1 through 82 as if fully set forth in this Count I.

85. PODS is a covered employer under the Equal Pay Act, 29 U.S.C. § 206(d), i.e. is engaged in interstate commerce and/or has over $500,000 in annual sales.

86. PODS's Market Manager I job is a position assigned to individuals who manage one location.

87. Gibbs managed two, not one location but was paid as a Market Manager I.

88. Upon information and belief, all of the Market Managers in Gibbs's territory were male, and all managers with more than one location assigned to them were paid as Market Manager IIs.

89. Gibbs performed the work of a Market Manager II but was compensated as a Market Manager I.

90. Gibbs performed the Market Manager job with equal skill, effort and responsibility under similar working conditions, i.e. she and the male Market Managers performed comparable roles for which Gibbs was paid less than her male colleagues.

91. Gibbs suffered damages due to this unlawful retaliation including, but not limited to, lost pay and emotional distress.

92. Gibbs seeks damages as permitted by the Equal Pay Act including, but not limited to:

    a. back pay,

    b. equitable relief, including but not limited to reinstatement or front pay damages in lieu thereof;

    c. compensatory and punitive (liquidated) damages;

    d. reasonable attorneys' fees and costs;

    e. tax offset; and

    f. interest awards and all other relief deemed necessary and reasonable by the Court.

**JURY DEMANDED FOR ALL CLAIMS**

Respectfully submitted:

　　／s／　　Lisa L. Clay
Lisa L. Clay, Attorney at Law
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
Phone: 630.456.4818
lisa@clayatlaw.com
ARDC # 6277257

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Erika Gibbs<br>c/o Lisa Clay<br>LAW OFFICE OF LISA L. CLAY<br>2100 Manchester Road, Suite 1612<br>Wheaton, IL 60187 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-06803 | **Marina Ravelo,** Investigator | (312) 872-9746 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/np*      8/5/2021

Enclosures(s)     Julianne Bowman, District Director     *(Date Issued)*

cc:   **PODS**
c/o Raquel R. Jefferson
Phelps Dunbar LLP
100 South Ashley Drive, Suite 2000
Tampa, FL 33602